**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**KATELYNN C.,**

   **Plaintiff,**

  v.           **Civil Action 3:25-cv-257**
               **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

   **Defendant.**

**<u>OPINION AND ORDER</u>**

Plaintiff, Katelynn C., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her applications for

a period of disability and disability insurance benefits ("DIB") and supplemental security income

("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 10), the

Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and

the administrative record (ECF No. 9). For the reasons that follow, the Commissioner's non-

disability determination is **REVERSED**, and this matter is **REMANDED** to the Commissioner

and the ALJ pursuant to Sentence Four of § 405(g).

**I.  BACKGROUND**

Plaintiff previously filed an SSI application, which was denied on September 30, 2020.

(R. at 99–114.) She then protectively filed her current applications in December 2023, alleging

that she became disabled beginning September 28, 2023. (R. at 276–77.) After Plaintiff's current

applications were denied initially and upon reconsideration, an Administrative Law Judge

("ALJ") held a telephonic hearing on March 6, 2025, at which Plaintiff, represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. (*Id*. at 61–95.) On April 11, 2025, the ALJ issued an unfavorable determination, which became final on May 30, 2025, when the Appeals Council declined review. (R. at 27–46, 1–7.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred because he assessed her residual functional capacity ("RFC")[1] after he rejected all medical opinions about her physical impairments without adequate explanation. (Pl.'s Statement of Errors 7–8, ECF No. 10.) Plaintiff additionally contends that the ALJ reversibly erred by failing to adequately explain the specific sit/stand option that he incorporated into Plaintiff's RFC. (*Id*. at 9–10.) The Court concludes that Plaintiff's first contention of error has merit.[2]

## II.    THE ALJ's DECISION

The ALJ issued the unfavorable determination on April 11, 2025. (R. at 27–46.) The ALJ initially noted that Plaintiff was determined to be capable of light work when her prior application was denied in September 2020. (*Id*. at 30.) The ALJ determined that he was not bound by that prior determination because Plaintiff had since developed additional severe impairments, and light work no longer accommodated her current conditions. (*Id*.)

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

[2] Because Plaintiff's first contention of error warrants remand, the Court need not reach her second contention of error. On remand, however, the ALJ may consider it if appropriate.

At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, September 28, 2023. (*Id.* at 33.) At step two, the ALJ found that Plaintiff had the following medically determinable impairments: Diabetes Mellitus; degenerative disc disease (DDD) of the lumbar spine; bilateral plantar fasciitis; posterior tibial tendon dysfunction (PTTD); morbid obesity; anxiety disorder; depression/bipolar disorder; and post-traumatic stress disorder (PTSD). (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 33.) Before proceeding to step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary exertion work as defined in 20

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?

> 2. Does the claimant suffer from one or more severe impairments?

> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> CFR 404.1567(a) and 416.967(a) except she requires a sit/stand option, where she can alternate between standing for 20 minutes and sitting for 60 minutes; frequent handling and fingering, bilaterally; no climbing ladders, ropes, or scaffolds; occasionally climb ramps, stairs, stoop, kneel, crouch, crawl, balance; no work at unprotected heights or with moving mechanical parts; can carry out very short and simple instructions, but not at a production rate pace; no interaction with public; occasional interaction with coworkers and supervisors, but no tandem tasks; and can operate in a low-stress environment, defined as having to occasionally make work-related decisions, and occasionally deal with changes in the workplace.

(*Id*. at 36.)

At step four, the ALJ relied on testimony from the VE to determine that Plaintiff would not be able to perform her past relevant work. (*Id*. at 38.) Relying on the VE's testimony again at step five, the ALJ determined that given her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative occupations of routing clerk, merchandise marker, and office helper. (*Id.* at 38–39.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 40.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error by rejecting all medical opinion evidence about her physical impairments without adequate explanation. (Pl.'s Statement of Errors 7–10, ECF No. 10.) [4] This contention of error has merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[5] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other

---

[4] The ALJ found persuasive the prior administrative findings from the state agency reviewing psychologists. (R. at 37.) Plaintiff's contentions, therefore, pertain solely to her physical impairments. The Court's analysis and discussion are, therefore, limited to the same.

[5] Because Plaintiff's applications were filed in 2023, they are subject to regulations governing applications filed after March 27, 2017.

medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions  . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

## A.     The State Agency Reviewers

Here, the ALJ discussed the state agency reviewers' prior administrative findings as follows:

> The DDS physical health source opinions are not persuasive. That includes J. Corcoran, MD at the initial level and Elizabeth Das, MD, at the reconsideration level. Both of these sources concluded that the claimant could perform a range of light exertional activity. The DDS sources concluded that she could perform light

> work, stand/walk six hours, sit six hours, never climb ladders, ropes or scaffolds; frequently balance; occasionally climb ramps or stairs; occasionally stoop, kneel, crouch or crawl; avoid all exposure to hazards. They also concurred with the limitations in the 2020 hearing order. These opinions are not persuasive. The longitudinal treatment history supports higher limits in exertion, sit/stand, and exertion, based on combination of physical issues. (*sic*)

(*Id*. at 36.)

As this discussion demonstrates, the ALJ considered the consistency factor and found it lacking. The ALJ explained that the reviewers' findings were not persuasive because the longitudinal record supported more restrictive exertion and sit/stand limits (*i.e.*, some of the reviewers' findings were inconsistent with the longitudinal record). (*Id*.) The ALJ did not, however, discuss the supportability factor.

The Sixth Circuit Court of Appeals has not addressed when an ALJ's failure to articulate the supportability or consistency factors is harmless. District Courts sitting in the Sixth Circuit have held, however, that such an error can be excused as harmless where: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with it, or (3) the goal of the regulation was otherwise met. *See, e.g.*, *Wilson C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00457, 2022 WL 4244215, at *6–7 (S.D. Ohio Sept. 15, 2022); *Burba v. Comm'r of Soc. Sec.*, No. 1:19-CV-905, 2020 WL 5792621, at *4 (N.D. Ohio Sept. 29, 2020); *Oliver v. Kijakazi*, No. 3:22-CV-28-DCP, 2023 WL 2587487, at *5 (E.D. Tenn. Mar. 21, 2023); *Nicholas E. v. Bisignano*, No. 4:25-CV-00002-HBB, 2025 WL 2054367, at *4 (W.D. Ky. July 22, 2025).

This case relates to the second scenario. The ALJ incorporated into Plaintiff's RFC limits that were consistent with, or more restrictive than the reviewers' limits. Specifically, the RFC that the ALJ assessed included all the limits found by the reviewers except that he included more restrictive balancing, manipulative, sit/stand, and exertion limits. If an ALJ's failure to articulate

the regulatory factors is harmless error when an ALJ adopts the same or similar limits as reviewers, it is also harmless when an ALJ assesses greater limits than reviewers. *See Gwendolyn F.H. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-214, 2023 WL 5772796, at \*4 (S.D. Ohio Sept. 7, 2023) (finding ALJ's lack of supportability discussion harmless; reviewers found plaintiff capable of restricted range of light work, but ALJ determined she was limited to a range of sedentary work). Accordingly, the ALJ's articulation error is harmless.

**B.    Dr. Arie**

The same cannot be said about the ALJ's discussion of a medical opinion from Tariq Arie, MD. The ALJ discussed that opinion as follows:

> Tariq Arie, MD, completed a functional summary August 19, 2024 (Ex. C9F). The claimant could only stand/walk for 20 minutes without interruption. She could sit for one to two hours. She had substantial limitations for bending and repetitive foot movement. She also had moderate limitations in pushing, pulling and reaching. This summary from Dr. Arie indicates that the limitations are only supposed to last for four to six months, however (ex. C9F, p. 3). This opinion is not persuasive as it is time limited. The longitudinal treatment history does not support the extent of manipulation limits recommended.

(R. at 37.)

As this discussion demonstrates, the ALJ again considered the consistency factor and found it lacking. Dr. Arie opined that Plaintiff would be "minimally limited" in her ability to perform simple grasping and manual tasks. (*Id*. at 941.) The ALJ explained that the longitudinal record supported less restrictive manipulative limits. (*Id*. at 37.) But the only manipulative-related evidence that the ALJ discussed in the determination was that Plaintiff had positive Phalen and Tinsel tests on her left side during a November 22, 2024 examination. (*Id*. at 38, 983.) Moreover, the record contains evidence that Plaintiff was diagnosed with cubital tunnel syndrome on the right. (*Id*. at 488, 492, 576, 760.)

8

This may have been harmless error. Federal courts generally review decisions of administrative agencies for harmless error. *Rabbers*, 582 F.3d at 654–55. Accordingly, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. United States Civ. Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983). And here, Plaintiff likely cannot show any prejudice because the ALJ incorporated into her RFC manipulative limits that were consistent with the ones opined by Dr. Arie. Specifically, Dr. Arie opined that Plaintiff was "minimally limited" in her ability to perform simple grasping and simple manual tasks; the ALJ likewise limited Plaintiff to frequent handling and fingering.[6] (*Id*. at 941, 36.)

Once again, however, the ALJ did not discuss the consistency factor. Instead, the ALJ explained that Dr. Aries' opinions were not persuasive because they were time limited. (*Id*. at 36.) Thus, it appeared that the ALJ accepted as persuasive all of Dr. Arie's other opined limits but that he determined that they should not have been temporary.

But the ALJ did not include in Plaintiff's RFC all of Dr. Aries' other opined limits. For instance, Dr. Arie opined that Plaintiff was substantially limited in her ability to bend, which appears akin to opining that she could never bend. (*Id*. at 941.) Instead of limiting Plaintiff to never bending, however, the ALJ limited Plaintiff to occasional types of bending (*i.e.*, stooping, kneeling, crouching, and crawling).[7] Similarly, Dr. Arie opined that Plaintiff was severely

---

[6] The functional summary form asked Dr. Arie to rate Plaintiff's ability to perform certain activities by checking a box for one of the following descriptors: "not affected," "minimally limited," "moderately limited," and "substantially limited." (R. at 941.) These ratings appear to correspond to "unlimited," "frequently," "occasionally," and "never."

[7] *See* SSR 85-14, 1985 WL 56857 at *7 (Jan. 1, 1985) (defining stooping, kneeling, crouching, and crawling as progressively strenuous forms of bending).

limited in her ability to perform repetitive foot movements, which appears akin to opining that she could never perform repetitive foot movements. (*Id*. at 941.) But the ALJ did not include in Plaintiff's RFC any limits related to repetitive foot movements. (*Id*. at 36.) Nor did the ALJ include any explanation as to why he modified or omitted these limits after indicating that the only reason he discredited them was because they were temporary. In addition, although Dr. Arie opined that Plaintiff was moderately limited in her ability to reach, the ALJ failed to include in Plaintiff's RFC a reaching limit or explain its omission. (*Id*. at 941, 36.)

The Court cannot conclude that the ALJ's modification or omission of these limits was harmless. The opinions, at least as to bending and repetitive foot movements, do not appear patently deficient because Dr. Arie provided some supporting rationale. In response to a question asking Dr. Arie to explain any substantial limits, Dr. Arie wrote that Plaintiff's bending was limited by severe low back pain after an auto accident and her foot movements were limited because she saw a podiatrist who had prescribed orthopedic shoes. (*Id*. at 941–42.) And the ALJ's broader discussion elsewhere fails to clarify why these limits were modified or omitted such that the goals of the regulations can be found to have been met despite the ALJ's articulation error.

Defendant does not address the ALJ's articulation error and instead spends considerable time addressing Plaintiff's contention that the ALJ must have relied on his lay opinion to formulate Plaintiff's RFC because he determined that all medical opinions of record were unpersuasive. (Def.'s Mem. in Opp'n 7–9, ECF No. 13.) And certainly, an ALJ's RFC determination "does not need to correspond to a particular physician's opinion." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge

10

is required to base her determination on a physician's opinion)). *See also Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") Nevertheless, an ALJ "must make a connection between the evidence relied on and the conclusion reached." *Tucker*, 775 F. App'x 226. And that lack of connection is the error that Plaintiff raises. She cites the regulations requiring the ALJ to articulate the consideration given to the supportability and consistency factors when evaluating opinion evidence. (Pl.'s Statement of Errors 7, ECF No. 10.) She also cites a case discussing those regulations. (*Id*.) She further asserts that even if the ALJ's RFC did not have to track any one opinion, the ALJ had a duty to explain the limits he did include. (*Id*. at 8.) That accurately describes the ALJ's conditional duty—when an ALJ adopts, endorses, or finds an opinion persuasive, he generally must incorporate its opined limits or explain their exclusion

Notably, the Court does not suggest that the ALJ was required to include in Plaintiff's RFC all of Dr. Arie's opined limits. But the ALJ indicated that Dr. Aries' opined limits (aside from the manipulative ones) were unpersuasive only because they were temporary. He therefore had a duty to adopt those limits or explain their omission using the regulatory factors. Because the ALJ did not discuss those regulatory factors, the Court is forced to speculate why the ALJ modified or omitted Dr. Aries' other, presumably persuasive, opined limits. This precludes meaningful review.

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's non-disability determination and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of §405(g) for further consideration consistent with this Opinion and Order.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*

CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE